IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NISSAN FORKLIFT CORPORATION, NORTH AMERICA, | |
| Plaintiff, | No. 05 C 4849 |
| v. | Paul E. Plunkett, Senior Judge |
| ZENITH FUEL SYSTEMS, L.L.C., PRECISION AEROSPACE GROUP, L.L.C. and ZENITH POWER PRODUCTS, L.L.C., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Nissan Forklift's ("Nissan" or "Plaintiff") Federal Rule of Civil Procedure ("Rule") 60 motion for reconsideration. Plaintiff asserts that the Court should reconsider its March 3, 2006 ruling that granted Zenith Fuel System's ("Zenith" or "Defendant") motion to stay three claims pending the completion of arbitration on a fourth claim. Plaintiff claims that because the Court was not required to stay the claims, the order should be reversed. Nissan contends that the Court did not understand its option to assert its discretion and because of public policy, the March 3, 2006 ruling was improper. For the reasons set forth below, the motion is denied.

### Background

This case involves two claims and two counterclaims that arise out of three different contracts. In approximately 1998, Plaintiff contacted Defendant regarding the manufacture of a liquified propane

gas fuel system for use in Nissan manufactured forklifts. In June 2000, Defendant signed a purchase order agreement in which Plaintiff sought to establish the general terms and conditions for all future purchase orders by Nissan of Zenith's fuel systems. *(See generally* Compl. Ex. A.) The document provided that Plaintiff's "general terms and conditions are attached" and that they "shall be used to govern all future purchase orders" until Nissan received "written notice that this agreement is no longer applicable." *(Id.)* Though the general terms and conditions attached to Nissan's complaint are dated January 1, 2002, a full year-and-a-half after Zenith signed the Master Purchase Order, both the Master Purchase Order and its general terms and conditions are silent as to the issue of arbitration.

By 2002, Nissan began selling forklifts incorporating Zenith's fuel system to the public. (Am. Compl. ¶ 10.) However, shortly after such sales began, Nissan alleges its customers began to experience various problems with Nissan forklifts equipped with Zenith's fuel system. *(Id.)* In response, Nissan and Zenith together attempted to resolve the various problems. *(Id.* ¶ 11.) Nissan thereafter submitted warranty claims to Zenith pursuant to what it claims to be the terms of the Master Purchase Order. *(Id.* ¶ 12.) Yet, despite this initial cooperation, Nissan contends that while Zenith initially honored Nissan's warranty claims, Zenith later began denying such claims as their numbers continued to increase. *(Id.)*

In an attempt to settle Nissan's warranty claims, the parties entered into a warranty settlement agreement in March 2004. After problems with the settlement agreement arose and the parties realized that they would not be able to resolve their issues, on August 22, 2005, Nissan filed suit against Zenith and its affiliates, Precision Aerospace Group, L.L.C. and Zenith Power Products, L.L.C. (collectively the "Zenith Defendants"), invoking diversity jurisdiction. As currently drafted, Nissan's two-count amended complaint alleges breaches of warranty and contract by Zenith of the

Master Purchase Order and also that Precision Aerospace Group and Zenith Power Products, as joint venturers, "are jointly liable for the acts and omissions of [Zenith], and for all of the damages proximately caused thereby."[1]

In response, the Zenith Defendants filed a counterclaim against Nissan for alleged breaches of contract arising from the March 2004 warranty settlement agreement as well as that of a third contract, the "Master Distributor Agreement," which the parties entered into on June 25, 2003. (Countercl. ¶¶ 31-40; *see also* Countercl. Ex. 2) (attaching a copy of the Master Distributor Agreement). Pursuant to the Master Distributor Agreement, Nissan agreed to sell its engines to Zenith such that Zenith would serve as the "exclusive distributor" of Nissan manufactured engines in the United States and Canada. (Countercl. Ex. 2 ¶¶ 1-2, 5(a).) Nissan also agreed to "renegotiate or terminate in accordance with terms and conditions satisfactory to Zenith, all existing distributor agreements between Nissan Industrial Engine Operations ("NIEO"), a division of [Nissan] and third parties" including, but not limited to, an enumerated list attached as an exhibit to the Master Distributor Agreement. (*Id.* ¶ 5(b).) Unlike the Master Purchase Order and its general terms and conditions, the Master Distributor Agreement provided for arbitration.

After Nissan filed its complaint and Zenith filed its counterclaims on November 15, 2005, Nissan moved to sever and stay only Count II of Zenith's counterclaim, which alleges a breach by Nissan of the Master Distributor Agreement, arguing that arbitration should be compelled to resolve the dispute as to that single issue. In response, Zenith has moved this Court to compel arbitration as to *all* claims raised by both Nissan and Zenith. Alternatively, Zenith argued for a stay as to all

---

[1] Nissan's August 22, 2005 complaint also contained an allegation of strict liability by Zenith arising out of its fuel system design and manufacture. However, this count was withdrawn when Nissan amended its complaint on January 6, 2006.

claims in this case in the event this Court were to find that only Count II of Zenith's counterclaim is subject to arbitration. On March 3, 2006, the Court granted in part and denied in part the parties' motions. The Court: (1) granted Nissan's motion to compel arbitration as to Count II of Zenith's counterclaim; (2) denied Zenith's motion to compel arbitration as to all claims; (3) denied Nissan's motion to stay only Count II of Zenith's counterclaim pending arbitration; (4) granted Zenith's motion to stay all claims pending arbitration of Count II of its counterclaim; and (5) denied without prejudice Nissan's motion to sever Count II of Zenith's counterclaim as moot.

## Discussion

Motions for reconsideration serve a limited function to correct manifest errors of law or fact or to present newly discovered evidence or an intervening change of law. *Cosgrove v. Bartolotta*, 150 F. 3d 729, 732 (7th Cir. 1998). Rule 60(b) allows a court to reconsider a final judgment on the grounds of mistake, inadvertence, surprise or excusable neglect; newly discovered evidence, fraud, void judgments, judgments satisfied, or "any other reason justifying relief." Fed. R. Civ. P. 60(b). Under this rule, relief is "an extraordinary remedy and is granted only in exceptional circumstances." *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000). Reconsideration is appropriate only when the facts or law on which the decision was based have changed or "the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made a an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A motion for reconsideration should not be used as an opportunity for parties to rehash old arguments or raise new arguments that could have previously been offered. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d

1264, 1270 (7th Cir. 1996); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)(noting reconsideration not appropriate to introduce new legal theories, arguments, or evidence that could have been heard during the pendency of the previous motion.)

Here, Nissan claims that the Court's reasoning that it was "compelled" to stay the claims pending the completion of arbitration was erroneous. Plaintiff suggests that the Court misunderstood Section 3 of the Federal Arbitration Act ("FAA"), in that it improperly relied on its mandatory language for what Plaintiff believes was not a mandatory decision. That section compels a court to stay an action pending an arbitration. 9 U.S.C. § 3. However, Plaintiff contends that the statute only applies to the very issues that are under arbitration, not to those claims that may not be directly affected by the outcome of the arbitration. Plaintiff avers that this Court misapplied the terms of the FAA and that we are not required, but actually have discretion, to stay the remaining issues. Plaintiff now asks the Court to exercise its discretion and reverse its March 3, 2006 ruling, claiming that had the Court utilized its discretion, it would have concluded that a stay would violate public policy.

Defendants contend that Plaintiff has not only failed to meet the strict reconsideration standard set forth in Rule 60, but also that this Court has properly determined that according to Section 3 of the FAA, the remaining claims should be stayed until the completion of arbitration. We agree. In our March 3, 2006 order, we relied on Section 3 of the FAA which compels a stay for issues that are covered by an arbitration clause. 9 U.S.C. § 3. Section 3 also tells us that when an action involves an issue that is arbitrable, then that action "shall" be stayed until the arbitration is complete. 9 U.S.C. § 3. In our memorandum opinion and order, we noted that the majority of the issues in this action were not covered under the arbitration agreement and as a guide, we looked to *Air Freight* where the court proclaimed that "[t]he fact that some of the issues involved in the case are arbitrable is enough to

*require* the entire case to be stayed pending arbitration of the arbitrable issues."[2] *See Air Freight Svcs. v. Air Cargo Transp., Inc.* 919 F. Supp. 321, 324-325 (N.D. Ill. 1996) (emphasis added) (citing U.S.C. § 3; *Itoh*, 552 F.2d at 1230-32; *Morrie & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 406-08(7th Cir. 1990); *Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993)).

In order to reach our decision, we combined *Air Freight's* instruction with the mandatory nature of the FAA. When construing a statute, it is most important to understand and execute legislature's intent. *Ind. Ins. Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 302 (2001)(internal citations omitted). The best way to determine the intent is through the carefully and intentionally chosen language of the statute. *Id.* at 302. When the ordinary meanings of the words offer a clear understanding of the intent, then "that intent must prevail and will be given effect." *Id.* at 302.

Section 3 provides that a lawsuit brought in this Court "upon any *issue* referable to arbitration . . . *shall* on application of one of the parties stay the trial of the *action* until such arbitration has been had . . . ." 9 U.S.C. § 3 (emphasis added). Just as Section 3 distinguishes between issue and action, so do we. Black's Law Dictionary defines issue as "a point in dispute" or in a federal civil procedure as "a single, certain, and material point" and action as "a civil or criminal judicial proceeding." BLACK'S LAW DICTIONARY 28, 835 (7th ed. 1999). In a literal reading of Section 3, we surmise that even when one single point in dispute is arbitrable, the entire proceeding must be stayed.

---

[2]We also noted that the facts in *Air Freight* are slightly different than in the instant matter in that its court appears to have reached its decision, in part, because the remaining, non-arbitrable claims hinged upon a matter to be resolved in arbitration. *See Air Freight*, 919 F. Supp. at 325. The court there chose not to interfere with the arbitration and ultimately stated that a stay is "required" even when all issues are not subject to an arbitration agreement. *Id.*

The facts or law upon which our decision was based have not changed, nor do we feel that we have patently misunderstood a party or have we made a decision outside the adversarial issues presented to us. Plaintiff has not established that this court has made a mistake or was neglectful, nor does it present any arguments that it was unable to previously bring, offer newly discovered evidence or state any other reason justifying relief, as required by Fed. R. Civ. P. 60(b). We have read the plain language of the statute, applied the ordinary meanings of its words, and do not believe that there has been any misinterpretation. This is not one of the extraordinary or exceptional circumstances that require us to reverse our prior judgement. *See McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000). Thus Plaintiff's motion for reconsideration must fail.

## Conclusion

For the reasons set forth above, Plaintiff's motion to reconsider this Court's March 3, 2006 ruling is denied.

**ENTER:**

**UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT**

DATED: APR 27 2006